## UNITED STATES v. DAVIS.

*(Circuit Court, W. D. Tennessee.* February 16, 1889.

1. OFFENSES AGAINST POSTAL LAWS—INDECENT POSTAL-CARDS—ACTS JUNE 18, AND SEPTEMBER 26, 1888.

The courts must reasonably construe the acts of congress, so that hypercritical judgment shall not take advantage of the elasticity of language necessarily general, to bring within it expressions merely rude, impolite, or not in good taste, but certainly to include obvious indecency of thought or expression, according to the common sense and understanding of ordinary men. And this is also the test as to the other terms used to describe the offense.

2. SAME—CONSTRUCTION.

Not only may the precise words be scrutinized, but also the context and the whole writing, which shall display, when taken together, the obnoxious meaning.

3. SAME.

A postal-card concerning the return of an article, about which the writer was in an angry temper, which contained words ordinarily called profane, and expressions too vulgar for quotation by the court, the indecency of which was disguised by the use of an initial letter, slang words reflecting on the character and conduct of the addressee, and a political epithet intended to be defamatory, all taken together, show the writing to be "indecent," "scurrilous," and "defamatory," and being calculated, and obviously intended, to reflect on the addressee, was held to be within the statute.

4. SAME—QUESTION OF FACT.

The obnoxious character of the writing is a question of fact for the jury, and not of law for the court. See *U. S.* v. *Olney,* in note at end of case.

Criminal prosecution against G. W. Davis.

*H. W. McCorry,* Dist. Atty.

*Thos. M. Kemp,* for defendant.

HAMMOND, J. The defendant has been found guilty of depositing a postal-card in the mails in violation of the postal laws of the United States, especially the act of June 18, 1888, c. 394, as amended by the acts of June 18, 1888, c. 394, and of September 26, 1888, c. 1039, 25 St. 187, Id. 496. The verdict, however, is subject to the opinion of the court, whether the language of the postal-card falls within the denunciations of the statute. It clearly does. The act makes it criminal

to deposit or cause to be deposited for mailing or delivering any postal-card containing delineations, epithets, terms, or language of an "indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display, and obviously intended, to reflect injuriously upon the character or conduct of another." Since the extension by this act of former statutes on this subject there can be no doubt that that which is written on postal-cards must be clean and decent, and wholly free from the objections embodied in the language which has been quoted from the act of congress. Of course the courts must reasonably construe the words of the act, and not allow a hypercritical judgment to take advantage of the elasticity of the language used by congress, necessarily so general in its description of the offense, by bringing within the act words or thoughts that are only rude, impolite, or not in good taste according to the standard of decency prescribed by the purists in language and thought. But, on the other hand, obvious indecency of thought or expression, according to the common sense, should not escape the penalty of this statute, nor that which obviously is calculated and intended to reflect injuriously upon the character or conduct of him who complains or is mentioned in the writing. And not only may the precise words be weighed in determining the question, but the whole context of the writing, and its evident spirit and tone, as they "display" the meaning of those words, may be looked to by the court and jury.

Inasmuch as the act does not include "profane" language in its description of the offense, except as it may be embraced in the other terms used by congress, and since in the common understanding the word "damned" is called "profanity," it may be doubted if the use of that word was intended to be punished always. But this writer says: "You can order car back, and be damned." In connection with the next phrase, which for sake of decency I shall not quote, although they have no dependence upon each other, and in connection with the whole writing in its tone and spirit, it is both "indecent" and "scurrilous" in the sense of the lexicographers, as well as the common understanding of its use. The next phrase above referred to is so vulgar as to admit of no doubt of its indecency, and the writer knew it to be so, and confessed it by the use of only an initial letter for the most offensive word. If it be only "slang," still it is of that coarse, gross, and essentially vulgar kind that it cannot be placed upon a postal-card without offending all sense of decency, even among the commonest and coarsest of men, and the use of all such phrases is prohibited by this new act of congress. Again, the writer says: "You are sharp, all of you are on the beat." This, again, may be "slang," but it is calculated, and obviously intended, to reflect injuriously upon the character and conduct of the addressee. Finally, he says: "Tell that Radical to send my book back as he agreed." To those familiar with the bitterness of current political strife and its evolution of distasteful epithets there will be no doubt that this one was intended for opprobrium of a severe kind, innocent as the epithet seems to common speech, and it was thought by the writer to be "defamatory"

unqestionably. If the subject-matter of this writing were political, having in view the almost unrestrained license in the use of defamatory epithets in political writing of almost every kind, except the very highest grade, and the fact that such epithets, which in the beginning are intended to denote ignominy and turpitude, become in the progress of political conflict, by a process of development, badges of honor and distinction, and are cheerfully accepted as such, I should say that this phrase did not come within the act of congress and was blameless, like "Abolitionist," "Black Republican," "Copperhead," "Carpet-Bagger," "Scalawag," "Rebel Democracy," "Confederate Brigadier," "Bourbon," "Free Trader," "Tariff Robber," "Mugwump," and the like. But the subject-matter of this writing is the return of a patent model of a car of some kind about which the writer was angry and ugly in his temper, and about which he writes "indecently," "scurrilously," and with evident purpose to defame and injuriously reflect upon the conduct of his correspondent. The commonplace and excessively vulgar style of the writing does not relieve it from its criminal character under this statute. One can be commonplace, and even vulgar, without being indecent and defamatory in the legal sense of the statute, as one may be either of these, or otherwise may violate the statute, without being commonplace or vulgar. That which shocks the ordinary and common sense of men as an "indecency" is the test, as it is also with the other descriptive terms of the act. Let the defendant be fined $25, and imprisoned until the fine and costs are paid. So ordered.

NOTE. In the case of U. S. v. Olney, (W. D. Tenn., at Jackson, April term, 1889,) the defendant wrote upon the postal-card as follows, viz.: "*Mr. Editor:* I thought that you was publishing a paper for the wheel, but I see nothing but rotten Democracy. I am a Republican, and a wheeler, and you can take your paper and Democracy, and go to hell with it." The court was asked by the district attorney to charge the jury, as a matter of law, that the writing was "scurrilous," as laid in the indictment, but declined to so charge, and left it to the jury as a matter of fact to say if the words were "scurrilous," upon a charge substantially conforming to the foregoing opinion, and the jury found a verdict of guilty.—[REPORTER.