In re BARBER.

(District Court, E. D. Wisconsin. August 20, 1896.)

1. HABEAS CORPUS.
    Where there can be no inquiry whether the charge constitutes an offense against the statute until the meeting of a grand jury, and no relief from imprisonment meantime, even if the charge is unfounded, a writ of habeas corpus is proper.

2. MISUSE OF MAILS—DUNNING LETTER.
    Act Cong. Sept. 26, 1888, prohibiting the sending through the mails of envelopes bearing any language of a defamatory or threatening character, or calculated, by its terms or manner of display, and obviously intended, to reflect injuriously upon another, does not forbid the sending of a respectful dunning letter in an unsealed envelope, on which are printed the words, "Mercantile Protection and Collection Bureau," in display letters of "10 points, or long primer French Clarendon, type."

Application by E. L. Barber for Habeas Corpus.

Petitioner in pro. per.
J. H. M. Wigman, Dist. Atty., for the United States.

SEAMAN, District Judge. The petitioner is imprisoned upon commitment by a commissioner of this court for alleged violation of section 3893, Rev. St., as amended by the act of congress of September 26, 1888 (25 Stat. 496), in sending through the mails envelopes, unsealed, containing dunning letters, described in the complaint and mittimus as follows:

"On the outside of which envelopes in which said dunning letters were inclosed was printed in ten points, or long primer French Clarendon, type, in the English language, the following libelous, scurrilous, and defamatory words

and language, to wit, 'Mercantile Protection and Collection Bureau,' in display letters, calculated by the size of the type, terms, manner, and style of display, and obviously intended, to reflect injuriously upon the character and conduct of another, to wit, upon the character and conduct of the persons to whom said envelopes and dunning letters were directed and addressed."

If "a speedy and efficacious remedy in the usual and orderly course of criminal procedure" were open to the petitioner, as in the case of imprisonment under an indictment alleged to be defective, the court would "not interfere with and confuse such procedure by undertaking to grant relief on habeas corpus in advance of a regular trial or hearing upon demurrer, unless it be shown affirmatively that because of special circumstances suitable relief cannot be had through the procedure above indicated." In re Hacker, 73 Fed. 464. But here there can be no inquiry whether the charge constitutes an offense against the statute until the meeting of a grand jury, and no relief from imprisonment meantime, even if the charge is unfounded, except through the writ of habeas corpus, or by furnishing bail. The circumstances are therefore presented which call for summary inquiry.

The object of section 3893 is to protect the recipient through the mails from indecent or injurious communications which might otherwise come under the cover of an envelope or wrapper. As remarked by Judge Jenkins in U. S. v. Smith, 45 Fed. 476, "Congress, possessing the power of exclusion, declines to permit the mail to become a vehicle for the transmission and circulation of mental filth." The further enactment of September 26, 1888, extends the inhibition to envelopes, postal cards, etc., "upon which any delineation, epithet, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display, and obviously intended, to reflect injuriously upon the character or conduct of another, may be written or printed, or otherwise impressed or apparent." This provision relates to the external appearance, and is a protection against delineations or words which will convey or imply insult, threat, or harm to the person addressed, operating either directly in injuring his feelings, or indirectly by attracting the notice of other persons, and raising injurious inferences. This protection concerning the mail service is clearly within the purview of congress; it is just and necessary; and in that view these enactments should receive the utmost liberality of construction within the rules of criminal jurisprudence, to purge the mails of injurious and improper uses. U. S. v. Brown, 43 Fed. 135; U. S. v. Dodge, 70 Fed. 235. But there can be no extension of the statutes by construction beyond their terms. Both the spirit and the terms of the act, fairly construed, must appear to have been violated, to sustain a charge. U. S. v. Dodge, supra. Here the accusation rests upon the following facts: (1) That the envelopes were unsealed; (2) that the inclosures were "dunning letters"; (3) that there was printed upon the envelopes the words, "Mercantile Protection and Collection Bureau," in display letters of "10 points, or long primer French Clarendon, type"; and (4) that they were mailed by the ac-

cused; and upon these premises the conclusion is based of probable cause that an offense was thereby committed in the "size of the type, terms, manner, and style of display, and obviously intended to reflect injuriously upon the character and conduct of the persons" addressed. The right to send a respectful "dunning letter" cannot be questioned, nor is it material whether sealed or unsealed, if there is no charge of improper contents. The words, "Mercantile Protection and Collection Bureau," are surely not per se defamatory or objectionable. The description given of the type in which they are printed is neither large nor unusual, but is of size and character quite common upon business envelopes. There is no averment and no suggestion that the envelope bore any delineation or mark otherwise by which it could be known to inclose a dunning letter, or which would give any indication of the contents. It is true that the testimony handed up with the return shows that a letter carrier testified: "I can tell from the address on these exhibits that they are dunning letters and collection letters. I can tell, when they go through the mail, from the envelope." But this is worthless as evidence, there being no showing or pretense of knowledge that this form of envelope was used exclusively to mark delinquents, or even for collection purposes. It amounts simply to a guess of such purpose because of the name on the envelope,—an inference which would apply as well to envelopes bearing the name of a law firm or a merchant, addressed to these same persons. The case is readily distinguishable from U. S. v. Dodge, supra, where the delineation was in the peculiar color of the envelopes and their well-known meaning "to coerce payment of money by thus exposing the person addressed"; and from U. S. v. Brown, supra, where the printing covered "more than the upper half of the envelope," with the same known purpose. Here there is no pretense of any such device, and, without that, an indictment cannot be founded upon the words alleged in this complaint. Proper and diligent efforts on the part of creditors to collect just debts are not to be discouraged, and the business of making collections, fairly conducted, is clearly legitimate. This statute extends only to the use through the mails of intimidation or exposure to obloquy, as a means for coercing payment.

Treating the words named in the complaint as appearing on the envelope, without other words in accompaniment or explanation,—which is the inference carried by the allegation,—I am unable to find, either in the terms or display, any ground to charge violation of the statute. And the exhibit envelopes which were introduced before the commissioner (and submitted for this hearing) show that the words were printed in such connection as to place it beyond doubt that they are not obnoxious to the statute. The entire reading is of the common business form, as follows: "In five days return to E. L. Barber's Mercantile Protection and Collection Bureau, Green Bay, Wis."; and the most prominence in type is given to the name "E. L. Barber," and the place, "Green Bay, Wis." The writ will issue.