## LEE RALEY ET AL. v. STATE OF TEXAS.

Decided November 7, 1907.

**1.—Continuance—Materiality.**

An application for continuance to obtain the testimony of an absent witness alleged to be material should show how or why it was material (Rev. Stat., art. 1278, as amended by Laws, 1897, p. 117).

**2.—Liquor Dealer's Bond—Orderly House—Vulgar Pictures.**

In a prosecution upon a liquor dealer's bond, on the question of its violation by the exhibition of "vulgar" pictures, it was not necessary for the court to define the word "vulgar," it being in common use and without technical meaning, but, undertaking to define it, the court must do so correctly.

**3.—Same—Definition.**

An instruction holding a liquor dealer liable for breach of his bond to keep an orderly house if it displayed pictures of nude women and the same were "vulgar or obscene," improperly defined "vulgar" in such connection as "mean, rustic, rude, low, unrefined,—used as the opposite of refined, enlightened and scientific," its significance as used in the statute being "offensive to a common sense of decency and modesty."

**4.—Same—Obscene.**

An instruction defining "obscene," among other meanings, as something which "delicacy" forbids to be exposed was also erroneous as requiring extreme and fastidious propriety.

**5.—Same—Nature in its Simplicity.**

A requested charge instructing the jury that pictures in order to be vulgar or obscene must be "something more than nature in its simplicity, as God made it," was properly refused, as on the weight of evidence. It can not be said that the exhibition of a "master-piece of art," or reproduction thereof in a liquor saloon was, as matter of law, no violation of the dealer's bond. It is a question for the jury.

Appeal from the District Court of Marion County.   Tried below before Hon. P. A. Turner.

*W. L. Armistead* and *J. H Benefield,* for appellant.

*W. M. Reavis,* for appellee.

WILLSON, CHIEF JUSTICE.—For the purpose of engaging in the sale of spirituous, vinous and malt liquors and medicated bitters capable of producing intoxication, to be drunk on his premises in the city of Jefferson, on November 22, 1907, appellant, Lee Raley, executed the bond required by the Act approved May 6, 1893 (Gen. Laws, p. 177), as amended by the Act approved April 27, 1901 (Gen. Laws, p. 314), with appellants, Herbert Rives and J. M. DeWare, as his sureties.

This suit was brought in the District Court of Marion County, by a petition filed March 8, 1907, in the name of the State for the use and benefit of said county, against said Raley and the sureties on his said bond.   The petition alleges a violation of the stipulation in the bond whereby Raley bound himself to keep an orderly house or place for the sale of spirituous, vinous and malt liquors, in that he did on or about March 6, 1907, allow his house and place for the sale of such liquors to contain "a certain obscene and vulgar picture, to wit, the picture of a nude woman," whereby he and his bondsmen, it is further alleged, became liable to the penalty of $500 fixed by the statute.   Violations of other conditions of the bond were also alleged, but as the finding of the jury was confined to the one we have particularly specified, it is unnecessary to state them.

Defendants answered by a general demurrer questioning the sufficiency of the petition, which it seems was not brought to the attention of nor acted upon by the court, and by a general denial of the truth of its allegations.

The jury returned a verdict against appellants, specifically finding that Raley had "allowed vulgar and obscene pictures in his place of business" at the time alleged in the petition.   In accordance with the verdict, on June 12, 1907, a judgment was rendered and entered in favor of the State for the use of Marion County and against appellants for the sum of $500.

The evidence developed that on or about March 6, 1907, while the bond sued upon was in force, appellant Raley had hanging on the wall behind the bar in his barroom in Jefferson, the picture of a nude woman, representing Hebe standing facing the bar, with her hands held down and over her pubis; also hanging on the wall of his barroom, another picture of a nude woman, with her back turned

towards the bar; and, placed on a table behind the bar, it seems, still another picture of a nude woman, covered by a thin veil or netting, in a reclining posture, and holding in her hand a bottle of whisky. The sizes of the respective pictures are not shown by the record, but one of them appears to have been about two by three feet and another about fourteen by twenty inches in size.

We do not think the court erred in overruling appellants' application for a continuance. The application avers that the testimony of John Corley and Walter Montgomery, the absent witnesses, was material to appellants' defense, but fails to show how or why it was material. It therefore was insufficient, and the court properly overruled it. (Sayles' Stat., art. 1278, as amended by the Act of 1897, Genl. Laws, p. 117; Earl v. State, 33 Texas Civ. App., 161.)

The court instructed the jury that it would be a violation of a condition of his bond if appellant Raley permitted his business house to contain pictures of nude women, if such pictures were vulgar or obscene, and in this connection defined the word "vulgar" as follows: "Vulgar, as used in this charge, means: mean, rustic, rude, low, unrefined. It is used as the opposite of refined, enlightened and scientific."

Appellants assign as error the action of the court in so defining the word "vulgar," and we think their contention must be sustained.

"Vulgar" is a word in common use, and without a technical meaning. Therefore, it can be, and we think should be, assumed that its meaning is as accurately known to the juror as it is to the court. If such assumption should be indulged, then it was entirely unnecessary that the court in his charge should have undertaken to define the word; but having undertaken to define it, it was incumbent on the court to define it correctly with reference to its use in the statute requiring the bond sued upon.

It doubtless is true that the word, according to the connection in which it may be used, may have each of the meanings given to it by the court's definition, but as used in the statute requiring the bond sued upon, we do not think its meaning is so limited. The evident purpose of the law requiring the liquor dealer to obligate himself to not permit vulgar or obscene pictures in his place of business, was to prevent the exhibition in liquor dealers' saloons of immoral and indecent pictures, such as are offensive to a common sense of decency and modesty, and capable, by being so exhibited, of operating to deprave and corrupt the minds of those who see them. We think the word as used in the statute must be held to convey such meaning as, with its companion word, "obscene," will accomplish the purpose, and no more than the purpose of the Legislature in enacting it. Limiting its meaning to the terms of the court's charge, the law would operate to subject the liquor dealer and his bondsmen to a penalty in cases it will not be seriously contended were intended to be reached by the denunciation of the statute. For instance, the word "rustic," used by the court in his definition of "vulgar," among other things, means "unadorned," "awkward," and "pertaining to the country, rural." So, if the word "vulgar" as used in the statute should be held to have such a meaning, the

liquor dealer and his bondsmen would be liable to the penalty denounced, were he to permit in his place of business a picture of a rural scene, or of an awkward boy "unadorned" by the conventional dress.  Again, the word "scientific," used in the same definition, is itself defined as "agreeing with, or depending on, the rules or principles of science."  A picture, therefore, which did not agree with the rules or principles of science, however unobjectionable it might be in other respects, would be the "opposite of scientific," that is, it would be unscientific; if unscientific, would be vulgar, and if vulgar in this sense, and if exhibited in a liquor dealer's saloon, would be a violation of the dealer's bond.  We do not believe the statute should be construed to have such an effect, and therefore hold the charge of the court in the particular complained of to be erroneous.

Appellants further insist that the court erred in defining "obscene" as "offensive to chastity and delicacy, impure, expressing or presenting to the mind or view something which delicacy, purity and decency forbid to be exposed."

Among other things, the word "delicacy" used in the court's definition means "extreme propriety," "critical niceness" and "fastidious accuracy."  So, measured by the definition given them, the jury were authorized to find either of the pictures in question "obscene," if they believed it violated extreme propriety, or in some of its features was not critically nice or fastidiously accurate.  If we are correct in the conclusion reached as to the object of the law, a charge which authorized that object to be so completely lost sight of is necessarily erroneous.

By their seventh assignment of error appellants complain of the refusal of the court to give the special charge asked by them, requiring the jury to find the pictures suggestive of lewdness or lasciviousness —"something more than nature in its simplicity, as God created it." We think the requested charge was properly refused.  For reasons already suggested, it would not have been proper to have so limited the meaning of the words "vulgar" and "obscene."  And to have instructed the jury that the pictures must be "something more than nature in its simplicity, as God created it," we think would have been erroneous because on the weight of the evidence.

By their eighth and ninth assignments of error appellants contend that the verdict and judgment are contrary to law and the evidence, in that the picture of Hebe was a reproduction of one of the masterpieces of fine art, and in no way suggestive of immorality, lewdness, licentiousness or lasciviousness.

Conceding that appellants' contention, as to the picture of Hebe, may be correct, still these assignments of error should be overruled. The evidence showed that appellant Raley also had exposed in his barroom two other pictures of nude women, either of which, from the viewpoint of the jury, may have been within the denunciation of the law, and therefore sufficient as a basis for their verdict.

But we are not prepared to say, as a matter of law, that the exhibition of one of the masterpieces of art, or of a reproduction thereof, in a liquor saloon, could not, under any circumstances, be a

violation of the dealer's bond. (U. S. v. Chesman, 19 Fed., 497; U. S. v. Smith, 45 Fed., 476.) Whether in a given case such a picture should be held to be "vulgar" or "obscene" or not, within certain well understood legal rules, would always be a question for the jury to determine in the light of the evidence submitted to them. (U. S. v. Harmon, 45 Fed., 414; U. S. v. Clarke, 38 Fed., 500.) Under a given state of facts the exhibition of such a picture might not make a question for submission to a jury; while under another given state of facts it might be entirely proper to submit to a jury the issue of whether such a picture was vulgar or obscene, or not, within the meaning of the statute.

Because of the error of the court in defining the words "vulgar" and "obscene," the judgment is reversed and the cause remanded.

*Reversed and remanded.*