THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MARTIN EAGLE, Defendant.

City Magistrate's Court of the City of New York, Borough of Queens, Rockaway Court, November 24, 1952.

*Leo Dikman* and *Alvin L. Korngold* for defendant.

*Louis L. Roos* and *Joseph T. McDonough* for plaintiff.

SHAPIRO, M.   The defendant is charged with possessing, with intent to sell, or distribute, certain lewd and indecent pictures, in violation of subdivision 1 of section 1141 of the Penal Law.

That section, so far as is here material, reads as follows: '' 1.  A person who   *   *   *   has in his possession with intent to sell   *   *   *   distribute   *   *   *   any obscene, lewd, lascivious, filthy, indecent or disgusting   *   *   *   picture   *   *   * is guilty of a misdemeanor ''.

This case directly raises the question whether pictures which depict women in various poses with their naked breasts and buttocks exposed come within the condemnation of the above statute.

The People contend that they do.   The defendant contends that '' *judged by present day standards* '' these pictures are not obscene, lewd, lascivious, filthy, indecent, or disgusting.

While it is true that in determining what is obscene '' The law will not hold the crowd to the morality of saints and seers '' (CARDOZO, Paradoxes of Legal Science [1928 ed.], p. 37) nor use as a sole test of obscenity the picture's '' capability of suggesting impure thoughts '' because '' The presence of a woman of the purest character and of the most modest behavior and bearing may suggest to a prurient imagination images of lust, and excite impure desires '' (*People* v. *Muller*, 96 N. Y. 409, 411), nor whether the picture, or representation, would merely '' tend to coarsen or vulgarize the youth who might witness it '' (*People* v. *Wendling*, 258 N. Y. 451, 453), yet if the picture not only '' tends to coarsen or vulgarize the youth '' but also tends '' to lower their standards of right and wrong, specifically as to the sexual relation '' (*People* v. *Wendling, supra,* p. 453) ; if it has the effect of stimulating impure sexual impulses and the tendency to '' excite lustful and lecherous desires '' (*People* v. *Eastman,* 188 N. Y. 478, 480) ; if it is '' calculated to appeal to the baser instincts of mankind '' (*People* v. *Fellerman,* 243 App. Div. 64, 65, affd. 269 N. Y. 629) it should properly be held to come within the ban of the statute.

It is argued by the defendant that these photographs are not obscene because '' mere nudity in painting or sculpture is not obscenity '' (*People* v. *Muller, supra,* p. 411), and because these pictures '' have been sold throughout the United States and are actually today being sold in bookshops, on Broadway, Madison and Fifth Avenues, in the City of New York.''

The obvious fact, however, is that these pictures are not works of art — they are cheap, tawdry, disgusting exhibitions of female nudity *in various insinuating poses,* which could have one purpose and one purpose only, and that to excite in the spectator impure sexual imaginings and to create lustful desire, and, if they are in fact being sold on the highways and byways of this city, the vendors and distributors should be prosecuted diligently and a stop put to such a vicious practice.

That their very coarseness and vulgarity may in some instances tend to repel, rather than to seduce, does not deprive these pictures of their basic indecency.

To sustain them as works of art is to close one's eyes to reality and to disregard the evident malignant and sordid purpose encompassed in their production.

So, too, the pious protestations " that the Court is not to act as a censor and attempt to interfere and regulate the manners, attitude and conduct of the community," but rather " to follow the test already laid down by the behaviour of the people in the community " makes the shameful assumption that these " strip-tease nudes " starting fully attired and finally winding up in various suggestive and provocative standing, sitting and lying poses, almost entirely devoid of clothes, accord with the ethical and moral standards of our community. If it does, Heaven help our future generations!

I refuse to believe that we must, or should, adjust ourselves to the practices in the Island of Yap, in the Far Pacific (see " Grass-skirted Yap ", *National Geographic Magazine,* Dec. 1952, p. 805 *et seq.*). I cannot bring myself to believe that our community is so " bikini-minded " that it would sanction and approve the practices shown in these photographs.

False delicacy and mere prudery are not involved in coming to the conclusion that if these pictures were *openly* displayed in any store window in New York the resultant resentment of the mothers and fathers in the neighborhood would make itself manifest at once. These are the people who make the determination of what is obscene or indecent " by present day standards " and not the person most censorious, nor the person so virtuous as to be impervious to all human frailties, nor, indeed, the person of virtue so low as not to have needed the additional impetus of these photographs.

Judged by these standards, the pictures now before the court are clearly obscene (*People* v. *Halpert,* 276 App. Div 825, leave to appeal to the Court of Appeals denied by FULD, J., Dec. 27,

1949; *People* v. *Osher*, 285 N. Y. 793, affg. 260 App. Div. 853; *People* v. *Fellerman*, 243 App. Div. 641, affd. 269 N. Y. 629, *supra*).

I am told in defendant's brief that four different Magistrates (for all of whom I have the highest regard) have "dismissed proceedings brought upon these very pictures."

It is with utter humility that I find myself unable to concur in their views that there is not even a question of fact as to the indecency of these pictures — particularly so when a reading of the record on appeal in *People* v. *Halpert* (*supra*) indicates that the finding of guilt there was predicated on pictures similar to those now before the court. The fact that in the *Halpert* case eight or ten pictures in each set were consecutively numbered so as to show the female first in a state of complete dress, then following each picture down in order to a state of almost complete nudity, is a distinction without a difference. Shuffling the order of the pictures certainly cannot make them obscene and indecent in the one instance, and lawful in the other.

In these days when many of our adolescents are feeling the stress and strain of life in a world tortured by doubts their burden should not be increased by making available to them pictures of the kind now before the court, and borderline distinctions, in an effort to sustain the legality of such pictures, should not lightly be indulged in.

As noted, this court has no hesitation in branding the pictures now before him as completely indecent and obscene. Even, however, if the court's conclusion as to the obscenity of the pictures were not in his opinion compelled as a matter of law, certain it is that their appearance from the standpoint of public morality and decency cannot be held to be clearly harmless. Accordingly, the best view that can be taken of the situation, from the viewpoint of the defendant, is that there is at least a question of fact which should be passed on by the trier of the facts.

The statement of the court in *People* v. *Winters* (294 N. Y. 545, 550, 551, revd. on other grounds 333 U. S. 507), dealing with a different subdivision of the same indecency section of the Penal Law is most apposite. The court there said: "Indecency and obscenity are not and never have been technical terms of the law and hence we are without any full or rigorous definition of the uses made thereof in the administration of justice. * * * *Consequently, a question as to whether a particular publication is indecent or obscene in that sense is a question of the times*

*which must be determined as a matter of fact, unless the appear-ances are thought to be necessarily harmless from the stand-point of public order or morality* ''.  (Italics ours.)

The motion of the defendant to dismiss the complaint is denied, and the defendant is held for the action of the Court of Special Sessions.